IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:   ERNIE LEE JACOBSEN AND
DONNA JEAN JACOBSEN                        CASE NO. 09-15667-DWH

IN RE:   JA-CO FOODS, INC.                 CASE NO. 09-16017-DWH

MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §363 TO SELL
CERTAIN PROPERTY OF DEBTORS, OUTSIDE THE ORDINARY
COURSE OF BUSINESS FREE AND CLEAR OF LIENS, CLAIMS
AND INTERESTS WITH LIENS, CLAIMS AND INTERESTS ATTACHING
TO SALE PROCEEDS AND FOR OTHER RELIEF
(VERNON, RIPLEY, BELMONT & RUSSELLVILLE PROPERTIES)

COMES NOW Ernie Lee Jacobsen and Donna Jean Jacobsen (the "Jacobsens") and Ja-Co Foods, Inc. ("Ja-Co") and files this their Motion for an Order Pursuant to 11 U.S.C. §363 to Sell Certain Property of Debtors, Outside the Ordinary Course of Business, Free and Clear of Liens, Claims and Interests With Liens, Claims and Interests Attaching to Sale Proceeds and for Other Relief (Vernon, Ripley, Belmont & Russellville Properties)(the "Motion"), and in support thereof, would respectfully show unto the Court as follows, to-wit:

I. JURISDICTION AND VENUE

1.      This Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§157 and 1334; 11 U.S.C. §§105, 361, 363, 365, 1107 and related statutes and rules, as well as various orders of reference. This is a core proceeding.

II. BACKGROUND

2       On October 29, 2009, the Jacobsens filed their Voluntary Petition for relief with this Court

under Chapter 11 of the Bankruptcy Code. On November 16, 2009, Ja-Co filed its Voluntary Petition for relief with this Court under Chapter 11 of the Bankruptcy Code. The Jacobsens and Ja-Co are continuing to operate as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

3. The Jacobsens and Ja-Co may be referred to herein collectively as the "Debtors".

4. The Jacobsens own, or control the ownership in, certain real property and improvements thereon in which eleven (11) Sonic restaurants are either currently, or that were formerly, operating. Prior to the Petition Date, the Debtors were the sole members of Jacobsen, LLC, which served as a holding company and owned all the member shares of each individual Limited Liability Company that owned each Sonic restaurant location (the "Holding Company"). However, the Holding Company was dissolved by the Debtors prior to the Petition Date and the Debtors are now the sole members of the eleven (11) separate Limited Liability Companies that operate each Sonic restaurant location.

5. The Jacobsens are also the sole shareholders of Ja-Co which manages each of the Sonic restaurants.

### III. DESCRIPTION OF SALE OF ASSETS

6. In the exercise of the Debtors' best business judgment, the Debtors have made the business judgment decision to liquidate some of their assets in an effort to generate cash to pay the indebtedness of certain of their secured creditors in full. Specifically, the Debtors desire to sell the following:

   i. Real property and improvements thereon, POS Systems, fixtures, leasehold improvements, goodwill, PAYS Systems and equipment of the Sonic restaurant located at 710 City Avenue in Ripley, MS, (the "Ripley Property");

   ii. Real property and improvements thereon, POS Systems, fixtures, leasehold improvements, goodwill, PAYS Systems and equipment of the Sonic restaurant located at 44237 Hwy. 17 South in Vernon, AL (the "Vernon Property");

   iii. Real property and improvements thereon, POS Systems, fixtures, leasehold improvements, goodwill, PAYS Systems and equipment of the Sonic restaurant located at 291 Second St. in Belmont, MS (the "Belmont Property");

   iv. Real property and improvements thereon, POS Systems, fixtures, leasehold improvements, goodwill, PAYS Systems and equipment located at 15736 New Jackson Highway in Russellville, AL (the "Russellville Property"); and

   v. The Sonic Franchise Agreements for the Ripley Property, the Vernon Property and the Belmont Property, which the Debtor, Ernie Jacobsen, shall assume and assign as-is.

7. The Ripley Property, the Vernon Property, the Belmont Property and the Russellville Property may sometimes be referred to herein collectively as the "Properties"

8. Each of the Debtors hold title to different aspects of the Properties. Specifically, the Jacobsens own the real property including all improvements thereon, fixtures, leasehold improvements, goodwill and the Sonic Franchise Agreements. Ja-Co owns the equipment, PAYS Systems and POS Systems.

9. The Debtors have secured a Stalking Horse Bidder for the Properties. The Stalking Horse Bidder is M & F Management LLP ("M & F"). M&F's offer to purchase the Properties is set forth in detail in the Approved LOI, a copy of which is attached hereto and incorporated herein by reference as Exhibit "A".

10. As set forth in the Approved LOI, M & F contemplates purchasing the real property and improvements thereon, fixtures, leasehold improvements, goodwill and Sonic Franchise Agreements (the "Real Property") for the amount of $600,000.00 ($150,000.00 for each location)(the "Real Property Purchase Price") and the equipment, POS systems and the PAYS systems (the "Personal Property") for the sum of $75,000.00 (the "Personal Property Purchase Price") for a total purchase price of $675,000.00

(the "Purchase Price"). The Approved LOI also provides for a breakup fee in the amount of $10,000.00 (the "Breakup Fee").

11.  The Breakup Fee is customary for stalking horse bidders in bankruptcy sales, it is fair and reasonable under the circumstances and it represents, in large part, the actual cost of conducting due diligence and preparing, and making, the offer that forms the stalking horse bid. M & F shall not be entitled to the Breakup Fee until an Asset Purchase Agreement with the successful purchaser has been executed. M & F has submitted the highest and best offer, to date, for the Properties, and the Debtors recommend, to the Court and to all creditors, that the offer should be accepted as the current highest and best bid, so that M & F is designated as the "Stalking Horse Bidder" and is entitled to be paid the Breakup Fee in the event it is not the successful purchaser at the conclusion of the Auction.

12.  M & F shall pay the Purchase Price in cash upon the closing of such sale.

13.  The current market value of the Real Property and the Personal Property is extremely difficult to determine, but the Debtors believe that the Real Property Purchase Price and the Personal Property Purchase Price are reasonable under the circumstances.

14.  The Debtors, in the exercise of their best business judgement, have made the business judgement decision to accept the offer from M & F to purchase the Properties, subject to any higher and better offers that the Debtors may receive on or before the time the Court sets to object to the Motion.

15.  In the event higher and better offers are to be submitted, these offers must be submitted to counsel for the Debtors no later than the time set by the Court for the filing of objections to the Motion. All higher and better offers must clearly state the: name and identity of the prospective purchaser; the assets to be purchased; the amount of the purchase price; the terms and conditions of the proposed sale/purchase;

and any other relevant information. In addition, each entity submitting higher and better offers must also submit evidence to counsel for the Debtors of its ability to consummate its offer.

16.     In the event higher and better offers are timely submitted, that qualify by containing the information set forth in paragraph 13 herein, the Court shall conduct an auction on the date and time scheduled for a hearing to approve the Motion (the "Auction"). At the conclusion of the Auction, the Debtors shall request the Court approve the highest and best bidder as having submitted the highest and best bid for the Properties. The Debtors shall also request the Court to approve the Debtors' choice as the backup bidder for the Properties.

17.     Immediately following the conclusion of the auction, the Court shall conduct a hearing in order to approve the highest and best offer as the highest and best bid, and to approve the next highest and best offer as the back up bidder. The Debtors shall also request that the Court approve the sale at that same hearing (the "Sale Hearing").

18.     Upon information and belief BancorpSouth ("Bancorp") holds a first, valid Deed of Trust on the Ripley Property.

19.     Upon information and belief G.E. Capital ("GE") holds first, valid Deeds of Trust on the Vernon Property, the Belmont Property and the Russellville Property.

20.     Upon information and belief the Bank of Vernon (the "Bank") holds a first, valid security interest in the PAYS Systems.

21.     The only consensual secured claims in and to the Properties are those asserted by Bancorp, GE and the Bank which shall attach to the sale proceeds. Other than ad valorem taxes the Debtors may

owe and the secured claims of Bancorp, GE and the Bank, there are no other valid liens, claims and security interests in, to or upon the Properties.

22. The Debtors seek authority of the Court to execute such deeds and bills of sale and any other related documents which are reasonably necessary to consummate and close the sale of the Properties.

23. M & F is a good faith purchaser. M & F is not an insider of the Debtors. The sale is an arm's length sale.

24. The consideration for the transfer of the Properties shall be paid directly from M & F to the appropriate taxing authorities and then to Bancorp, GE and the Bank as the first lien holders on the property described hereinabove. If the sale proceeds exceed the amounts due and owing Bancorp, GE and the Bank the excess proceeds will be placed in a separate, interest-bearing, Debtor-in-possession account which shall be established and controlled by counsel for the Debtors in accordance with the guidelines of the United States Trustee, with distributions occurring only after approval of this Court, following notice and a hearing.

25. The Debtors represent to the creditors and parties-in-interest that the sale of the Properties is in the best interests of the respective estates, creditors and parties-in-interest. The Purchase Price, as described herein, is fair, reasonable and appropriate.

26. In addition to the relief set forth above, upon a hearing with respect to the Motion, the Debtors request entry of an order that will, *inter alia*, (i) find that the successful purchaser of the Properties has bid, negotiated and purchased in good faith, and (ii) waive the ten (10) day stay period, if it exists, set forth in Bankruptcy Rule 6004(g).

27. A prompt sale of the Properties will likely enable the Debtors to realize the maximum value for the Properties. The Debtors believe that the terms and conditions set forth herein are fair and equitable to both buyer and seller, and thus reflect a transaction that will generate buyer interest and ultimately will result in a successful sale of the Properties. The Debtors believe that any material delay in consummating the proposed sale of the Properties will result in a reduction in the value of the Properties. Therefore, the Debtors submit that the proposed sale of the Properties is justified and should be approved by the Court.

## IV. ARGUMENT

28. Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession, after notice and a hearing, may sell property of the estate outside the ordinary course of business. *See 11 U.S.C. §§ 363(b) and 1107(a) (giving chapter 11 debtors, as debtors-in-possession, all the rights and powers of a trustee, with certain exceptions not applicable here).*

29. Courts (including the Fifth Circuit) have uniformly held that approval of a proposed sale of property under Section 363(b)(1) is appropriate where the transaction is consistent with the Debtor's reasonable business judgment. *See, Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2nd Cir. 1983); Stephens Industries, Inc. v. McClung, 789 F.2d 386, 391 (6th Cir. 1986); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D. N.Y. 1989).*

30. Additionally, both before and after the enactment of the Bankruptcy Code, courts have permitted a proposed sale of all or substantially all of the assets of a debtor outside the ordinary course of business where the sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir. 1986); In re Lionel*

*Corp., 722 F.2d 1063 (2nd Cir. 1983); In re Equity Funding Corp. of America, 492 F.2d 793, 794 (9th Cir. 1974), cert. denied, 419 U.S. 964 (1974) (noting that "[o]ther circuits have recognized the power of the Bankruptcy Court under Chapter X to authorize a sale of the Debtor's property under less than emergency conditions where such sale is necessary to avoid deterioration in the value of the assets").*

31. The Debtors and their professionals have carefully considered and analyzed various reorganization scenarios and values attributed thereto. The Debtors believes that a near-term sale of certain of their assets, including the Properties, can result in the maximum benefit to the Debtors and their respective estates.

32. The proposed sale outside of a plan context is warranted in this case in that the precise terms of the proposed sale will not "restrict any creditors' rights to vote on a plan, [will] not dictate any terms of any future plan, [will] not provide for the release of claims by any party, and [will] not restrict any other party from pursing any causes of action it may have against the Debtor." *United Steel Workers v. Condere Corp. (U.S. District Court for the Southern District of Mississippi, Judge Bramlette, 1999) (unpublished opinion).* Under the proposed sale, the Debtors will have no obligation to prepare a plan meeting certain terms and conditions. Moreover, any creditor or party in interest which may object to this Motion will still have an opportunity to object to any plan.

33. Accordingly, the proposed sale of the Properties described herein is consistent with the Debtors' business judgment, is in the best interest of the Debtors' respective estates and creditors, and will not impermissibly dictate any potential reorganization plan terms, and thus the sale should be approved.

34.     Bankruptcy Code Section 363(f) provides that a debtor may sell or otherwise transfer property outside the ordinary course of business free and clear of any interest in such property if:

(a)   applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b)   such entity consents;

(c)   such interest is a lien and the price at which such property is to be sold is greater that the aggregate value of all liens on such property;

(d)   such interest is in bona fide dispute; or

(e)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*11 U.S.C. Section 363(f)*.

Because Section 363(f) is drafted in the disjunctive, only one of the conditions set forth in that statute needs to be met for a sale free and clear of interests to occur.

35.     Under Section 363(f)(2), a bankruptcy debtor may sell estate property free and clear of interests where the interest holders consent to such a sale. *11 U.S.C. § 363(f)(2)*. The requisite consent may be either express or implied from the circumstances surrounding the sale. To the extent that any creditor with an interest in the subject property receives notice of this Motion and does not file any objections, they should be deemed to have implicitly consented to the contemplated transactions. *See Veltman v. Whetzal, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement to stipulation on authorizing sale free of interest, constituted consent to the sale free and clear of interests); Hargrove v. Pemberton (In re Tabore, Inc.), 175 B.R. 855 (Bankr. D. N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of Section*

*363); In re Shary, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (failure to object to transfer of liquor license issued by state constituted consent to sale).* Therefore, either expressly or implicitly, the Debtors believe that the requirements of Section 363(f)(2) for the sale or transfer of the Properties free and clear of interests will be satisfied with respect to the interest holders.

36. Counsel for the Debtors has had to expend a significant amount of time with respect to the Motion. Further, but for the efforts of Debtors' counsel, the Properties could not be sold, and certainly could not be sold in as timely a fashion, thereby increasing the Debtors' "costs of carrying" the Properties. Thus, as a result, the sale proceeds should be "surcharged" for payment of Debtors' counsel's fees and expenses associated therewith and associated with the sale of the Properties.

37. Further, the United States Trustee (the "UST") also incurred certain fees related to the Motion. Thus, as a result, the sale proceeds should be "surcharged" for payment of the UST fees pursuant to UST guidelines to the extent distribution of the sale proceeds increases the fees of the UST.

38. Other grounds to be assigned upon a hearing hereof.

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully pray that this Honorable Court will, upon a hearing hereof, enter its order granting the Motion as described herein and will further authorize the Debtors to execute such documents as may be reasonably necessary to consummate the transaction herein. The Debtors pray for other such general and specific relief as this Court may deem just.

DATED, this the 12th day of January, 2010.

Respectfully submitted,

ERNIE LEE JACOBSEN AND
DONNA JEAN JACOBSEN

and

JA-CO FOODS, INC.

By Their Attorneys

HARRIS JERNIGAN & GENO, PLLC


By: *Melanie T. Vardaman*
Craig M. Geno
Melanie T. Vardaman

OF COUNSEL:

Craig M. Geno, Esq.; MSB No. 4793
Jeffrey K. Tyree, Esq.; MSB No. 9049
Melanie T. Vardaman, Esq.; MSB No. 100392
Harris Jernigan & Geno, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 - Facsimile

## CERTIFICATE OF SERVICE

I, Melanie T. Vardaman, do hereby certify that I have caused to be served this date, via electronic filing transmission and/or U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Sammye S. Tharp, Esq.
Office of the United States Trustee
sammye.s.tharp@usdoj.gov

THIS, the 12th day of January, 2010.

/s/ Melanie T. Vardaman
Melanie T. Vardaman

**M & F Management LLP**
**c/o Greg Malatesta**
**101 Jane Cove**
**Clarksdale, MS 38614**

December 30, 2009

Mr. Craig Geno, Esq,
Ms. Melanie Vardaman, Esq.
(By email)

Re:   Vernon, Al   Sonic # 3321
      Belmont, MS Sonic # 4503
      Ripley, MS Sonic # 4518
      Russellville, Al Sonic # 4636
      Ernie Lee Jacobsen and Jaco Foods, Inc.

Dear Craig and Melanie,

This letter amends the previously transmitted letter of intent addressed to Sonic Industries. This is a non-binding letter of intent that contains provisions that are being discussed for a possible sale of the business named above from your client, the seller named above, to M & F Management, LLP (M& F), its owners individually and/or one or more subsidiaries, owned or controlled by M & F Management, LLP. M & F Management is a Mississippi limited liability partnership owned by Greg Malatesta and Mattson Flowers. It is our understanding that the above named franchises are owned by Ernie Jacobsen and/or Jaco Foods, Inc.

This is not a contract or legally binding agreement, but merely an outline of possible contract terms for discussion purposes only. The terms of the transaction being discussed are set forth below, but the terms (and the possible sale itself) are not binding unless and until they are set forth in a written contract signed by the parties. The word "shall" is used in the attached terms only as an example of how a contract might read, and it does not mean that the attached terms are or ever will be legally binding.

M & F proposes to purchase the assets constituting the above named stores including, but not limited to, all land, buildings, equipment, POS systems, PAYS, fixtures, leasehold improvements and goodwill, assignment of licensing agreements with Sonic and sign leasing rights, but specifically excluding cash and accounts receivable. M & F will not be assuming any liabilities or obligations of any nature whatsoever. You have provided us with an equipment listing (attached), all of the equipment listed thereon must be included in

-1-



the sale, as well as any equipment now located in the stores that is not listed. The purchase price shall be Six Hundred Thousand Dollars ($600,000.00)(Real Property Purchase Price) for all the real property assets listed above and the Sonic Licensing Agreements for those locations, all of which are owned by Ernie Jacobsen. The purchase price shall be Seventy Five Thousand Dollars ($ 75,000.00) (Personal Property Purchase Price) for all the personal property assets listed above which are owned by Jaco Foods. The Real Estate Purchase Price and the Personal Property Purchase Price shall be paid by M & F at closing. Both the Real and Personal Property Purchase Price(s) shall be subject to the usual adjustments and prorations (taxes, insurance, etc.)for this type transaction. Our intent to purchase both the real and personal property assets are contingent upon M & F being the successful bidder for both real and personal property assets and the figures set forth above are based on that contingency.

Upon acceptance of this letter of intent, we will instruct our attorneys to prepare a formal Asset Purchase Agreement incorporating the terms and conditions of this letter of intent, and containing the usual agreements, covenants, representations, warranties, indemnifications and other provisions commonly found in such agreements, which we will present for you for review. The Asset Purchase Agreement will also set forth the usual and customary terms regarding due diligence and opinions of counsel. We understand that the Asset Purchase Agreement(s) would be subject to Bankruptcy Court approval.

To our knowledge, we have submitted the highest and best offer, to date, for the assets and should be designated the "Stalking Horse Bidder." We ask that we be allowed a "Breakup Fee" of Ten Thousand Dollars ($10,000.00) in the event that the properties are sold through the Bankruptcy Court at auction to an entity other than M & F. This fee would be fair and reasonable under the circumstances and it represents, in large part, the actual cost of conducting due diligence and preparing, and making, the offer that forms our stalking horse bid. We would ask that we be paid the Breakup Fee when a sale the successful bidder, other than M& F, has been completed.

Thank you very much.

Sincerely,

M & F Management, LLP

By: _____
Greg Malatesta
Managing Partner

cc: Mattson Flowers



## Equipment Inventory @ 12.16.2009

|  | RIPLEY |  |
|---|---|---|
| BUN TOASTER | ROUND UP |  |
| STEAMER | ROUND UP |  |
| HOTDOG GRILL | ROUND UP |  |
| 4FT GRILL | LANG |  |
| 3 VAT FRYERS | FRYMASTER |  |
| GRILL MEAT FREEZER | SILVERKIMG |  |
| REACH IN COOLER |  | 1 |
|  |  |  |
| WALK-IN COOLER | ARTIC TEMP |  |
| WALK-IN FREEZER | ARTIC TEMP |  |
| FOUNTAINETTE | SILVERKING |  |
| DOUBLE - HEAD SLUCH MACHINE | TAYLOR |  |
| METRO SHELVES |  |  |
| ALL PAYES |  |  |
| MENUS HOUSINGS |  |  |
| 2 ORDERMATIC REGESTORS |  |  |
| MCGUNN SAFE |  |  |
| DRESSER UNIT | BEVERAIR |  |
| BLENDER |  | 1 |
| FUDGE POT |  | 1 |
| 3 COMP SINK |  | 1 |
| HANDSINK |  | 2 |
| BUNTABLE |  | 1 |
| CONEY TABLE |  | 1 |
| APW HEAT WELL |  | 1 |
|  |  |  |
| ICM MACH 2 HEAD | TAYOR |  |
| CARHOP TABLE WITH SINK |  | 1 |
| BAGGING TABLE |  | 1 |
| SALT BAG |  | 1 |
| COKE MACH |  | 1 |
| PREP TABLE |  | 1 |

P.O. BOX 8999 • COLUMBUS, MS 39705 • 662-328-5009 • FAX 662-328-5154



## Equipment Inventory @ 12.16.2009

Belmont

| | |
|---|---|
| BUN TOASTER | ROUND UP |
| STEAMER | ROUND UP |
| HOTDOG GRILL | ANTUNE |
| 4FT GRILL | LANG |
| 3 VAT FRYERS | FRYMASTER |
| GRILL MEAT FREEZER | SILVERKING |
| REACH IN COOLER | BEVERAGE AIR |
| REACH IN FREEZER | |
| WALK-IN COOLER | ARTIC TEMP |
| WALK-IN FREEZER | ARTIC TEMP |
| FOUNTAINETTE | SILVERKING |
| DOUBLE - HEAD SLUCH MACHINE | TAYLOR |
| METRO SHELVES | |
| ALL PAYES | 32 |
| MENUS HOUSINGS | 32 |
| 2 ORDERMATIC REGESTORS | 3 |
| MCGUNN SAFE | 1 |
| DRESSER UNIT | 1 |
| BLENDER | HAMILTON BEACH |
| FUDGE POT | 1 |
| 3 COMP SINK | 1 |
| HANDSINK | 2 |
| BUNTABLE | 1 |
| CONEY TABLE | 1 |
| APW HEAT WELL | 1 |

| | |
|---|---|
| ICM MACH 2 HEAD | TAYLOR |
| CARHOP TABLE WITH SINK | 1 |
| BAGGING TABLE | 1 |
| SALT BAG | 1 |
| COKE MACH | 1 |
| PREP TABLE | 2 |

P.O. BOX 8999 • COLUMBUS, MS 39705 • 662-328-5009 • FAX 662-328-5154



## Equipment Inventory @ 12.16.2009

VERNON

| | |
|---|---|
| BUN TOASTER | ROUND-UP |
| STEAMER | ROUND-UP |
| HOTDOG GRILL | |
| 4FT GRILL | LANG (with table and bun table) |
| 3 VAT FRYERS | FRYMASTER |
| GRILL MEAT FREEZER | SILVER KING |
| REACH IN COOLER | MCCALL (metro shelves) |
| REACH IN FREEZER | MCCALL (metro shelves and racks) |
| WALK-IN COOLER | ARTIC TEMP |
| WALK-IN FREEZER | ARTIC TEMP |
| FOUNTAINETTE | SILVER KING |
| SINGLE HEAD SLUCH MACHINE | TAYLOR |
| METRO SHELVES | (FRONT STOCKROOM) |
| ALL PAYES | 28 |
| MENUS HOUSINGS | 28 |
| 2 ORDERMATIC REGESTORS | |
| MCGUNN SAFE | |
| DRESSER UNIT | DELFIELD |