UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

In re:

ERNIE LEE JACOBSEN and                    Case No. 09-15667-DWH
DONNA JEAN JACOBSEN,                       Chapter 11

                Debtors.


JA-CO FOODS, INC.,                         Case No. 09-16017-DWH
                                           Chapter 11

                Debtor.
_____

**SONIC INDUSTRIES LLC'S LIMITED OBJECTION TO DEBTORS' MOTION FOR
ORDER PURSUANT TO 11 U.S.C. § 363 TO SELL BELMONT, RIPLEY,
RUSSELLVILLE, AND VERNON PROPERTIES**
_____

Sonic Industries LLC ("Sonic"), a subsidiary of Sonic Corp., submits this Limited

Objection to the Motion for an Order Pursuant to 11 U.S.C. § 363 to Sell Certain Property of

Debtors Outside the Ordinary Course of Business Free and Clear of Liens, Claims, and Interests

With Liens, Claims, and Interests Attaching to Sale Proceeds and for Other Relief (Vernon,

Ripley, Belmont, & Russellville Properties) ("Motion to Sell Belmont, Ripley, Russellville, and

Vernon Properties," Dkt. No. 73) filed by Ernie Lee Jacobsen and Donna Jean Jacobsen, debtors

in Case No. 09-15667, and by Ja-Co Foods, Inc., debtor in Case No. 09-16017, on January 12,

2010.  Ernie Lee Jacobsen and Donna Jean Jacobsen are referred to hereinafter as "Jacobsen

Debtors" and Ja-Co Foods, Inc. is hereinafter referred to as "Ja-Co Debtor."  In support of this

Limited Objection, Sonic states as follows:

1

1.      Beginning in 1963, Sonic and related companies established a unique brand of drive-in restaurant, with distinctive and proprietary trade names, trademarks, service marks, trade dress, foods, and food delivery system.  At present there are more than 3,560 Sonic drive-in restaurants located in 42 states.  All of them are franchised by Sonic and are independently owned and operated by various individuals and entities. Sonic, for itself and its franchisees, has a vital interest in ensuring high quality, uniform standards, including appearance, at all Sonic drive-ins.  Each Sonic franchisee agrees to comply with Sonic's business policies, practices, and procedures in order to uphold those standards, and, in turn, the value of the Sonic brand.  Sonic franchisees also agree to comply with numerous monetary and non-monetary obligations as set forth in the applicable Sonic license agreements.

2.      Over a period of years, Sonic and Debtor Ernie Lee Jacobsen entered into a series of Sonic license agreements ("Sonic License Agreements") whereby Sonic granted to him a separate license for each of numerous Sonic drive-in restaurants at designated locations in Mississippi and Alabama.  There are currently 11 Sonic License Agreements in effect with Debtor Ernie Lee Jacobsen for 11 locations in those states, including 291 Second Street, Belmont, Mississippi (CIF 4503) ("Belmont Location"), 710 City Avenue South, Ripley, Mississippi (CIF 4518) ("Ripley Location"), and 44237 Highway 17 South, Vernon, Alabama (CIF 3321) ("Vernon Location").  Copies of the Sonic License Agreements for Belmont Location, Ripley Location, and Vernon Location have been filed with the Court as Exhibits G, H, and T, respectively, to Sonic's Motion to Set Prompt Deadline for Assumption or Rejection of Executory Contracts, Etc. (Dkt. No. 38) filed in Case No. 09-15667. Previously, Debtor Ernie Lee Jacobsen had a Sonic License Agreement for 15736 New Jackson Highway in Russellville, Alabama (CIF 4636) ("Russellville

2

Location"). Belmont Location, Ripley Location, Russellville Location, and Vernon Location are hereinafter referred to collectively as "Subject Locations."

3.    Jacobsen Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 29, 2009 ("Petition Date"). Ja-Co Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 16, 2009. According to Motion to Sell Belmont, Ripley, Russellville, and Vernon Properties, Ja-Co Debtor managed each of the Sonic restaurants at Subject Locations.

4.    The Sonic drive-in restaurants at Belmont Location, Ripley Location, and Vernon Location were closed by Jacobsen Debtors on or before December 14, 2009, without Sonic's permission. Section 14.02 of Sonic License Agreements for said locations provides in part as follows:

> Licensee [Debtor Ernie Lee Jacobsen] shall be deemed to be in breach of this agreement and Licensor [Sonic] may, at its option, terminate this agreement and all rights granted herein at any time during the term hereof without affording Licensee any opportunity to cure the breach, effective immediately upon Licensee's receipt of a notice of termination, upon the occurrence of any of the following events:
>
> (a) If Licensee ceases to operate the Sonic Restaurant or otherwise abandons the Sonic Restaurant (other than closure permitted pursuant to Section 6.05(c)(vi) herein) or forfeits the legal right to do or transact business at the location licensed herein.

The exception referenced above, namely Section 6.05(c)(vi), provides that Licensee shall operate the Sonic Restaurant "everyday of the year (except Easter, Thanksgiving and Christmas), and at least ten (10) hours per day or such other hours as may from time to time be reasonably prescribed by Licensor (except when the Sonic Restaurant is untenantable as a result of fire or other casualty) . . . ."

3

5.     Although Sonic is entitled to terminate the Sonic License Agreements for Belmont Location, Ripley Location, and Vernon Location pursuant to Section 14.02(a) of the applicable Sonic License Agreements, as quoted above, Sonic is not seeking to terminate those agreements at this time, provided that any assumption and assignment of said Sonic License Agreements comports with applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 365(b), and the terms of said Sonic License Agreements.

6.     In Motion to Sell Belmont, Ripley, Russellville, and Vernon Properties, Debtors seek permission of the Court to sell the real property, improvements, POS systems, fixtures, leasehold improvements, goodwill, PAYS systems, and equipment at Subject Locations and for Debtor Ernie Lee Jacobsen to "assume and assign as-is the Sonic License Agreements applicable to those locations" (Motion to Sell Belmont, Ripley, Russellville, and Vernon Properties, ¶ 6(d)).   The proposed purchase price for said assets is Six Hundred Seventy-Five Thousand Dollars ($675,000.00). Counsel for Debtors has advised counsel for Sonic that in using the phrase "assume and assign as-is," Debtors intend <u>not</u> to comply with 11 U.S.C. § 365(b), which provides that if there has been a default in an executory contract or unexpired lease, the debtor may not assume such contract or lease unless, at the time of assumption of such contract or lease, the debtor:  (a) cures, or provides adequate assurance that the debtor will promptly cure, such default, (b) compensates, or provides adequate assurance that the debtor will promptly compensate, the other party to the contract or lease for any actual pecuniary loss to such party resulting from such default, and (c) provides adequate assurance of future performance under such contract or lease.

7.     Sonic objects to any assumption or assignment of the Sonic License Agreements for Belmont Location, Ripley Location, or Vernon Location without compliance

4

with 11 U.S.C. § 365(b) and the terms of said agreements. Since the Sonic License Agreement with respect to Russellville Location was terminated on or about February 29, 2008, there is no Sonic License Agreement with respect to that location for Debtor Ernie Lee Jacobsen to assume and assign.

8. Under the applicable Sonic License Agreements, including but not limited to Sections 5.02 (royalty fees), 5.03 (advertising fees), 6.05(c)(x) (promotions/point of purchase fees and sign lease payments), and 11.01 (advertising and brand expenditures), Debtor Ernie Lee Jacobsen owes Sonic the sum of Forty-Three Thousand One Hundred Forty-Two Dollars and Ninety-Five/100s ($43,142.95) as of Petition Date. Said sum is calculated as follows:

| Location | Co-Op Fees | Ad Fund Fees | POP/Sign Lease Fees | Royalty Fees | Subtotal for Each Location |
|---|---|---|---|---|---|
| Ripley | $4,555.52 | $973.77 | $1,907.49 | $7,365.64 | $14,802.42 |
| Vernon | $4,194.23 | $903.48 | $2,172.95 | $5,588.68 | $12,859.34 |
| Belmont | $5,016.03 | $1,078.95 | $585.48 | $8,800.73 | $15,481.19 |
| **Totals** | **$13,765.78** | **$2,956.20** | **$4,665.92** | **$21,755.05** | **$43,142.95** |

Under Section 5.05 of the applicable Sonic License Agreements, Debtor Ernie Lee Jacobsen is required to pay a late charge of 1.75% per month on past-due obligations. Thus, the late charge on the sum of Forty-Three Thousand One Hundred Forty-Two Dollars and Ninety-Five/100s ($43,142.95) from Petition Date through February 19, 2010, which is the date on which the subject motion is set to be heard, is Two Thousand Three Hundred Sixty-Five Dollars and Twenty-Five/100s ($2,365.25). The per diem late charges are Twenty Dollars and Ninety-Four/100s ($20.940 for every day after February 19, 2010, until paid in full.

9.      Pursuant to Section 17.02 of the applicable Sonic License Agreements, Sonic also is entitled to recover from Debtor Ernie Lee Jacobsen "the reasonable costs, expenses and attorneys' fees incurred by Licensor" in any action or proceeding to "secure, enforce, protect, or defend Licensor's rights and remedies under this License." Sonic estimates its reasonable costs, expenses, and attorneys' fees thus far in connection with its efforts to prevent the closure of the Sonic restaurants at Belmont Location, Ripley Location, and Vernon Location, to deal with the proposed assumption and assignment of the Sonic License Agreements for said locations, and to enforce its rights thereunder to be approximately Twelve Thousand Dollars ($12,000.00). In addition to the sums set forth in Paragraph 8 above, Debtor Ernie Lee Jacobsen should be required to pay said costs, expenses, and attorneys' fees in conjunction with any assumption and assignment of said Sonic License Agreements. Sonic requests a reasonable opportunity to prove such costs, expenses, and attorneys' fees, if necessary.

10.     The Sonic License Agreements for Belmont Location, Ripley Location, and Vernon Location are not freely transferrable. Obviously, it is very important to Sonic that any assignee of said agreements have the necessary integrity, skill, experience, and financial wherewithal to own and operate properly Sonic restaurants at those locations. Section 13.01 of said agreements provides in part: "The rights and duties created by this agreement are personal to Licensee and Licensor has granted the License in reliance on the collective character, skill, aptitude and business and financial capacity of Licensee and Licensee's principals. Accordingly, except as may be otherwise permitted by this Section 13, neither Licensee nor any person or entity with an interest in Licensee shall directly or indirectly, through one or more intermediaries, without Licensor's prior written consent sell, assign, transfer, convey, give away, pledge, mortgage,

6

or otherwise encumber any direct or indirect interest in the License . . . .  Any such purported assignment occurring by operation of law or without Licensor's prior written consent and pursuant to the terms of this Section 13, shall constitute a default of this Agreement by Licensee, and such purported assignment shall be null and void."  Section 13.04(a) of said Sonic License Agreements provides that in addition to any assignments or contingent assignments contemplated by the terms of Sections 13.02 and 13.03, "Licensee shall not sell, transfer, or assign the License to any Person or Persons without Licensor's prior written consent," but "such consent shall not be unreasonably withheld."  Section 13.04(b)(i) of said agreements provides that a precondition to such consent is satisfaction of all accrued monetary obligations "whether due under this agreement or otherwise."  Thus, Sonic is entitled to require the curing of Debtor Ernie Lee Jacobsen's defaults under all Sonic License Agreements; however, without waiving its right to assert such position with respect to any assumption and assignment of other Sonic License Agreements, Sonic is willing to consider the applicable monetary defaults to be only those with respect to monetary obligations for Belmont Location, Ripley Location, and Vernon Location, as outlined in Paragraphs 8 and 9 above.

11.     In addition, the highest and best use of the four locations at issue is use as a Sonic drive-in restaurant.  M&F Management LLP, the stalking horse bidder referenced in Motion to Sell Belmont, Ripley, Russellville, and Vernon Properties, has conditioned its bid upon assignment of the applicable Sonic License Agreements.  Sonic considers M&F Management LLP to be an acceptable assignee of the applicable Sonic License Agreements, provided the requirements set forth in this Limited Objection are satisfied.

7

12.     The assignment of the Sonic License Agreements for Belmont Location, Ripley Location, and Vernon Location contributes significantly to the value of the assets to be sold, because of various factors, including the fact that the application fee for a new Sonic License Agreement is currently $45,000.00 and various monthly fees under any new Sonic License Agreement for each location would be higher than they are under the existing Sonic License Agreements.

13.     Sonic reserves other grounds for objection to be assigned at a hearing on this matter.

WHEREFORE, ABOVE PREMISES CONSIDERED, Sonic respectfully submits that Debtors' Motion to Sell Belmont, Ripley, Russellville, and Vernon Properties should not be granted, except upon the following conditions:

1.     Debtor Ernie Lee Jacobsen complies with the requirements of 11 U.S.C. § 365(b), including payment of the sum of Forty-Three Thousand One Hundred Forty-Two Dollars and Ninety-Five/100 ($43,142.95) plus late fees through the date of payment in full, all as described in Paragraph 8 above, plus reasonable costs, expenses, and attorneys' fees, as described in Paragraph 9 above; or, in the alternative, that the proceeds of the sale of assets with respect to said locations be surcharged to the extent of said amounts and said amounts then be paid immediately to Sonic;

2.     Assignment of Sonic License Agreements for Belmont Location, Ripley Location, and Vernon Location be to M&F Management LLP or such other individual(s) or entity(ies) as may be acceptable to Sonic in its reasonable discretion; and

3.     Satisfaction of such other requirements as may be just and proper under the circumstances.

Furthermore, Sonic requests such other general and specific relief as to which it may be entitled.

THIS, the 16th day of February, 2010.

8

Respectfully submitted,


/s/ Paul A. Matthews
_____

PAUL A. MATTHEWS (TBPR No. 5591)
ROBERT K. ALVAREZ (MS Bar No. 1547)
Attorneys for Sonic Industries LLC
BOURLAND HEFLIN ALVAREZ MINOR & MATTHEWS, PLC
5400 Poplar Avenue, Suite 100
Memphis, TN 38119-3660
Telephone:      901-683-3526
Facsimile:      901-763-1037
E-Mail:          pmatthews@bhammlaw.com




## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of February, 2010, a copy of the foregoing was served via ECF upon the parties requesting notice and via U.S. Mail, postage prepaid, upon the following:

| | |
|---|---|
| Craig M. Geno, Esq. | U. S Trustee |
| Attorney for Debtor | Office of the U.S. Trustee |
| Harris Jernigan & Geno, PLLC | 100 West Capitol Street, Suite 706 |
| P.O. Box 3380 | Jackson, MS  39269 |
| Ridgeland, MS  39158-3380 | |


/s/ Paul A. Matthews
_____