IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| IN RE: | ERNIE LEE JACOBSEN AND DONNA JEAN JACOBSEN | CASE NO. 09-15667-DWH |
| IN RE: | JA-CO FOODS, INC. | CASE NO. 09-16017-DWH |

**AGREED ORDER GRANTING MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §363 TO SELL CERTAIN PROPERTY OF DEBTORS, OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS WITH LIENS, CLAIMS AND INTERESTS ATTACHING TO SALE PROCEEDS AND FOR OTHER RELIEF (VERNON, RIPLEY, BELMONT & RUSSELLVILLE PROPERTIES)**

THIS CAUSE having come on for consideration by the Court of the Motions for an Order Pursuant to 11 U.S.C. §363 to Sell Certain Property of Debtors, Outside the Ordinary Course of Business, Free and Clear of Liens, Claims and Interests With Liens, Claims and Interests Attaching to Sale Proceeds and for Other Relief (Vernon, Ripley, Belmont & Russellville Properties)(the "Motion")(Docket # 73 and # 39) filed herein by Ernie Lee Jacobsen and Donna Jean Jacobsen (the "Jacobsens") and Ja-Co Foods, Inc. ("Ja-Co") in their respective bankruptcy cases and the objections of Sonic Industries LLC (Docket #133 and #65), Terri Matthews, Inc. (Docket #130 and #63), Bank of Vernon (Docket #132 and #64), GE Capital Franchise Finance Corporation (Docket #135 and #66), the Mississippi State Tax Commission (Docket #136 and #67) and BancorpSouth Bank (Docket #122); and the Court having heard and considered the Motion, and being advised in the premises, finds as follows, to-wit:

1.      The Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§157 and 1334; 11 U.S.C. §§105, 361, 363, 365, 1107 and related statutes and rules, as well as various orders of reference. This is a core proceeding.

1

2. Notice and a hearing were adequate and appropriate. The Jacobsens and Ja-Co provided a copy of the Motion, and notice in connection therewith, to all creditors and all parties in interest in their respective bankruptcy cases.

3. On October 29, 2009, the Jacobsens filed their Voluntary Petition for relief with this Court under Chapter 11 of the Bankruptcy Code. On November 16, 2009, Ja-Co filed its Voluntary Petition for relief with this Court under Chapter 11 of the Bankruptcy Code. The Jacobsens and Ja-Co are continuing to operate as debtors-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

4. The Jacobsens and Ja-Co may be referred to herein collectively as the "Debtors".

5. The Jacobsens own, or control the ownership in, certain real property and improvements thereon in which eleven (11) Sonic restaurants are either currently, or were formerly, operating. Prior to the Petition Date, the Debtors were the sole members of Jacobsen, LLC, which served as a holding company and owned all the member shares of each individual Limited Liability Company that owned each Sonic restaurant location (the "Holding Company"). However, the Holding Company was dissolved by the Debtors prior to the Petition Date and the Debtors are now the sole members of the eleven (11) separate Limited Liability Companies that operate each Sonic restaurant location.

6. The Jacobsens are also the sole shareholders of Ja-Co, which manages each of the Sonic restaurants.

7. In the exercise of the Debtors' best business judgment, the Debtors made the business judgment decision to liquidate some of their assets in an effort to generate cash to pay on the indebtedness owed to certain of their secured creditors. Specifically, the Debtors desire to sell the following:

  i. Real property and improvements thereon, POS Systems, fixtures, leasehold improvements, goodwill, PAYS Systems and equipment of the Sonic restaurant located at 710 City Avenue in Ripley, MS, subject to the real property exception set forth in Paragraph 12 below (the "Ripley Property");

  ii. Real property and improvements thereon, POS Systems, fixtures, leasehold improvements, goodwill, PAYS Systems and equipment of the Sonic restaurant located at 44237 Hwy. 17 South in Vernon, AL (the "Vernon Property") and the adjacent real property and improvements and equipment thereon (the "Vernon Adjacent Property");

  iii. Real property and improvements thereon, POS Systems, fixtures, leasehold improvements, goodwill, the Sonic signs, PAYS Systems and equipment of the Sonic restaurant located at 291 Second St. in Belmont, MS (the "Belmont Property");

  iv. Real property and improvements thereon, fixtures, leasehold improvements and goodwill located at 15376 New Jackson Highway in Russellville, AL (the "Russellville Property"); and

  v. The Sonic Franchise Agreements and Sonic Sign Leases for the Ripley Property, the Vernon Property and the Belmont Property (the "Sonic Franchise and Sign Agreements"), which the Debtor, Ernie Jacobsen, shall assume and assign upon the terms set forth hereinbelow. However, there is no sign lease for the Sonic signs at the Belmont Property.

8. Legal descriptions of the real property for the Ripley Property, the Vernon Property, the Vernon Adjacent Property, the Belmont Property and the Russellville Property are attached hereto and incorporated herein by reference as Collective Exhibit "A". All real property descriptions are subject to amendment due to survey matters.

9. The Ripley Property, the Vernon Property, the Vernon Adjacent Property, the Belmont Property, and the Russellville Property may sometimes be referred to herein collectively as the "Assets".

10. Each of the Debtors holds title to different aspects of the Assets. Specifically, the Jacobsens own the real property, including all improvements thereon, fixtures, leasehold

3

improvements and goodwill. Ja-Co owns the equipment, PAYS Systems and POS Systems. Ernie Jacobsen is the franchisee and sign lessee under the Sonic Franchise and Sign Agreements, and Sonic Industries LLC ("Sonic") is the franchisor and sign lessor. Ernie Jacobsen owns the Sonic signs at the Belmont Property, subject to Sonic's trademark and trade dress rights.

11. The Debtors secured a Stalking Horse Bidder for the Assets. The Stalking Horse Bidder is M & F Management LLP ("M & F"). M & F's original offer to purchase the Assets is set forth in the Approved Letter of Intent ("Approved LOI"), a copy of which is attached to the Motion as Exhibit "A". Since the filing of the Motion, the Debtors, Sonic, GE Capital Franchise Finance Corporation ("GE"), Bank of Vernon and BancorpSouth Bank ("BancorpSouth") have further negotiated with M & F for its purchase of the Assets, as a package, on the terms and conditions set forth in this Agreed Order.

12. The real property associated with the Ripley location consists of a parcel on which the Ripley Sonic restaurant is situated and an adjacent vacant lot, all as more fully described in that certain deed of trust in favor of BancorpSouth recorded in Book 301, beginning at page 684, in the land records in the office of the Chancery Clerk of Tippah County, Mississippi, and as subsequently renewed and in a certain unrecorded survey plat by Mears-Kirksey Land Surveying dated March 13, 2001. Said adjacent vacant lot is excluded from the sale of the Assets and is thus excluded from the definition of "Assets" and "Ripley Property" as used in this Agreed Order.

13. The Debtors, in the exercise of their best business judgment, made the business judgment decision to accept the offer from M & F to purchase the Assets, on the terms and conditions set forth in this Agreed Order. The Debtors received no bids or competing offers in

4

connection with the Motion. Accordingly, the offer by M & F on the terms and conditions set forth in this Agreed Order is the highest and best bid for the Assets.

14. BancorpSouth holds a first, valid Deed of Trust on the Ripley Property.

15. GE holds first, valid Deeds of Trust on the Vernon Property, the Belmont Property and the Russellville Property. Terri Matthews, Inc. ("TMI") holds a second, valid Deed of Trust in the Belmont Property.

16. Bank of Vernon holds a first, valid security interest in the POS systems, the PAYS Systems and the equipment, as well as a valid first-priority security interest and mortgage on the Vernon Adjacent Property and the equipment and improvements located thereon.

17. The only consensual secured claims in and to the Assets are those held by BancorpSouth, GE, TMI and Bank of Vernon, which shall attach to the sale proceeds in the same order, extent, validity and priority as existed pre-petition. Other than ad valorem taxes the Debtors may owe and the secured claims of BancorpSouth, GE, TMI and Bank of Vernon, there are no other valid liens, claims and security interests in, to or upon the Assets.

18. The gross purchase price for the Assets shall be allocated as follows, subject to certain surcharges and adjustments as set forth hereinbelow:

 i)   $200,000.00 for the real estate that is part of the Ripley Property;

 ii)   $450,000.00 for the real estate that is part of the Belmont Property, the Vernon Property and the Russellville Property ($150,000.00 for each property);

 iii)   $75,000.00 for the equipment, POS systems and the PAYS systems (collectively, the "Personal Property") located at the Vernon Property, the Belmont Property and the Ripley Property; and

 iv)   $25,000.00 for the Vernon Adjacent Property and the equipment and improvements located thereon.

19.  BancorpSouth shall receive the entire proceeds of the portion of the purchase price allocated to the real estate portion of the Ripley Property, less (a) a surcharge of real estate taxes, with penalties and interest through March 31, 2010 for the Ripley Property in the amount of $9,980.28 and (b) the Sonic surcharge provided in Paragraph 23 below in the amount of $6,019.74; provided, however, that in any event, the net proceeds which BancorpSouth shall receive, at closing, shall be a cash payment of $184,000.00, with the purchase price allocated to the Ripley Property to be adjusted, if necessary, so that the net amount received by BancorpSouth at closing shall be $184,000.00.

20.  GE shall receive the entire proceeds of the portion of the purchase price allocated to the real estate portion of the Belmont Property, the real estate portion of the Vernon Property and the real estate portion of the Russellville Property, less (a) a surcharge of real estate taxes, with penalties and interest through March 31, 2010 for the Belmont Property, the Vernon Property and the Russellville Property in the amount of $18,332.49 and (b) the Sonic surcharge provided in Paragraph 23 below in the amount of $4,263.44; provided, however, that in any event, the net proceeds which GE shall receive, at closing, shall be a cash payment of $427,404.07, with the purchase price allocated to the real estate portion of the Belmont Property, the real estate portion of the Vernon Property, and the real estate portion of the Russellville Property to be adjusted, if necessary, so that the net amount received by GE at closing shall be $427,404.07.

21.  Bank of Vernon shall receive the entire proceeds of the portion of the purchase price allocated to the Personal Property located at the Vernon Property, the Belmont Property and the Ripley Property, as well as the entire proceeds of the purchase price allocated to the Vernon Adjacent Property and the equipment and improvements located thereon, less (a) a

6

surcharge of personal property taxes, with penalties and interest through March 31, 2010 for the Personal Property in the amount of $8,355.76 and (b) the Sonic surcharges provided in Paragraph 23 below in the amounts of $3,789.73 and $2,178.00. Accordingly, Bank of Vernon shall receive, at closing, a net cash payment of $87,854.51.

22. The Sonic drive-in restaurants at the Belmont Property, the Vernon Property and the Ripley Property are subject to franchise agreements and sign leases with Sonic, copies of which are attached to Sonic's Motion to Set Prompt Deadlines for Assumption or Rejection of Executory Contracts, Etc. (Docket #38) filed in the Jacobsens' bankruptcy case and are incorporated herein by reference (the "Sonic Franchise and Sign Agreements"); however, the Sonic signs at the Belmont Property are not the subject of any current Sonic sign lease. The Sonic Franchise and Sign Agreements are the same agreements referenced in Paragraph 7(v) above. By agreement of Sonic and Debtor Ernie Lee Jacobsen, the Franchise Agreement for Russellville was terminated; thus, the Sonic Franchise Agreement for Russellville is not subject to assumption and assignment by Ernie Lee Jacobsen, and M & F so acknowledges. The Sonic Franchise and Sign Agreements are executory contracts and unexpired leases of Ernie Lee Jacbosen. Sonic has objected to Ernie Lee Jacobsen's assuming and assigning the Sonic Franchise and Sign Agreements without satisfying the requirements of 11 U.S.C. § 365(b).

23. In order to resolve Sonic's objection, Sonic shall receive a surcharge of $16,251.91, allocated as follows: $4,263.44 to the portion of the real property purchase price allocated to the Belmont Property, the Vernon Property and the Russellville Property, $3,789.73 to the portion of the purchase price of the Personal Property allocated to the Belmont Property and the Vernon Property, $2,179.00 to the portion of the purchase price of the Personal Property allocated to the Ripley Property, and $6,019.74 to the portion of the real property purchase price

7

allocated to the Ripley Property. The surcharge amounts are accepted by Sonic as a partial payment of the cure amounts required pursuant to 11 U.S.C. § 365(b) with respect to the Belmont, Vernon and Ripley Sonic Franchise and Sign Agreements. Upon receipt of the surcharge amounts, Sonic shall apply the surcharge amounts for the Ripley Property toward the pre-petition debt owed to Sonic for that location. Upon receipt of the other surcharge amounts, Sonic shall apply one-half of those surcharge amounts to Ernie Lee Jacobsen's pre-petition debt on the Belmont location and one-half of those surcharges to Ernie Lee Jacobsen's pre-petition debt on the Vernon location. Sonic and the Debtors reserve their respective rights, claims, and defenses as to the matters addressed in this numbered paragraph.

24. In exchange for Sonic's receipt of the surcharge payments provided in Paragraph 23 above, the Debtor, Ernie Jacobsen, is hereby authorized to assume, and then to assign, the Sonic Franchise and Sign Agreements to M & F, free and clear of all liens, claims and interests. The assumption and assignment of the Sonic Franchise and Sign Agreements shall be effective and enforceable immediately upon the last to occur of the following: (a) this Agreed Order has become a final order that is not subject to being appealed or is no longer the subject of an appeal; (b) the entire surcharge amount of $16,251.91 has been paid to Sonic; and (c) M & F and/or the principals of M & F, individually, have executed the documents required by Sonic. Ernie Jacobsen shall transfer to M & F the Sonic signs at the Belmont Property free and clear of all liens, claims, and interests but subject to Sonic's trademark and trade dress rights.

25. The consideration for the transfer of the Assets shall be paid, at closing, directly from M & F to the appropriate taxing authorities and then to Sonic and then to BancorpSouth, GE and Bank of Vernon as provided in this Agreed Order. The purchase price for the Assets shall be adjusted for proration of 2010 ad valorem taxes as of March 31, 2010.

26  M & F is a good faith purchaser for value pursuant to 11 U.S.C. § 363(m). M & F is not an insider of the Debtors. The sale is an arm's length sale.

27  The sale of the Assets is in the best interests of the Debtors' respective estates, their creditors and parties-in-interest. The Purchase Price, as described herein, is fair, reasonable and appropriate.

28  A prompt sale of the Assets will likely enable the Debtors to realize the maximum value for the Assets. The terms and conditions set forth herein are fair and equitable to both M&F and the Debtors. Therefore, the sale of the Assets is justified.

29  The Motion is granted subject to the terms and conditions set forth herein, and the Court hereby approves the sale of the Assets to M&F free and clear of all liens, claims and interests pursuant to 11 U.S.C. § 363(f). The liens, claims and interests, as described and set forth hereinabove, shall attach to, and be paid from, the sale proceeds on the terms set forth hereinabove.

30.  With respect to the objection of TMI, there are no excess funds being generated over and above claims due to GE, BancorpSouth, Bank of Vernon and ad valorem taxing authorities. Accordingly, the Assets are sold free and clear of all liens, claims and interests of TMI.

31.  With respect to the objection of the Mississippi State Tax Commission (the "MSTC"), there are no excess funds being generated over and above claims due to GE, BancorpSouth, Bank of Vernon and ad valorem taxing authorities. Accordingly, the Assets are sold free and clear of all liens, claims and interests of the MSTC.

32. The objections of Sonic, TMI, Bank of Vernon, GE, the MSTC and BancorpSouth are resolved by the terms of this Agreed Order. No other creditors or parties in interest filed an objection to the Motion. Thus, the Assets are hereby sold free and clear of all liens, claims and interests pursuant to § 363(f) of the Bankruptcy Code.

33. The Jacobsens and the authorized representative of Ja-Co shall be and hereby are authorized to execute and deliver any and all such transfer instruments and title documents and/or any forms promulgated by the public authorities necessary or desirable to recognize, acknowledge and consummate the sale of the Assets.

34. To the extent any provisions of the Bankruptcy Rules provide for any stay of the effectiveness of this Order, those provisions are waived and this Order is effective, immediately.

35. This is a final judgment as contemplated by the applicable Bankruptcy Rules.

SO ORDERED, this the 5th day of May, 2010.

_____
HON. DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

**AGREED TO AND APPROVED:**

/s/ Craig M. Geno

---
Craig M. Geno, Esq.
Melanie T. Vardaman, Esq.
Counsel for the Debtors

/s/ Paul A. Matthews

---
Paul A. Matthews, Esq.
Attorney for Sonic Industries LLC

/s/ Les Alvis

---
Les Alvis, Esq.
Attorney for BancorpSouth Bank

/s/ Charles E. Winfield

---
Charles E. Winfield, Esq.
Attorney for Terri Mathews, Inc.

/s/ Justin B. Little

---
Justin B. Little, Esq.
Attorney for Bank of Vernon

/s/ James J. McNamara, IV

---
James J. McNamara, IV, Esq.
Attorney for GE Capital Franchise Finance Corporation

/s/ Heather S. Deaton

---
Heather S. Deaton, Esq.
Attorney for Mississippi State Tax Commission

/s/ Tom T. Ross

---
Tom T. Ross, Esq.
Attorney for M & F Management, LLP

Order Prepared and Presented By:

Craig M. Geno; MSB No. 4793
Jeffrey K. Tyree; MSB No. 9049
Melanie T. Vardaman; MSB No. 100392
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 – Facsimile

H:\PAM\Clients\Sonic - Jacobsen B-R 2K9501\Agreed Order 04-10\PAM v5 Agreed Order-Sale of Vernon Ripley Belmont, Russellville.doc

# COLLECTIVE EXHIBIT "A"

PROPERTY DESCRIPTION AS PER DIMCO SURVEY

RIPLEY, TIPPAH COUNTY, MISSISSIPPI

Approximately 1.125 acres of land, located in the Northeast Quarter of Section 23 and the Northwest Quarter of Section 24, Township 4 South, Range 3 East, Tippah County, Mississippi, and also being a portion of Block #47 of the City of Ripley, described as follows:

Begin at an iron rod found on the east 24.75 foot right-of-way line of Commerce Street, said point being 1108.72 feet South of and 99.00 feet West of the Northeast Corner of said Section 23; thence run South 89 degrees 06 minutes 41 seconds East, 378.53 feet, passing a 1.5" angle iron found at a fence corner at 110.52 feet on line, to an angle iron found on the western 60 foot right-of-way line of Mississippi Highway No. 15, thence continue along said right-of-way line, 161.11 feet, along the arc of a curve to the right, having a delta of 04 degrees 59 minutes 24 seconds, a radius of 1849.86 feet, and a chord of South 25 degrees 26 minutes 32 seconds West, 161.06 feet, to an iron rod set; thence North 87 degrees 16 minutes 33 seconds West, 309.51 feet to an iron rod set on the east right-of-way line of said Commerce Street; thence continue along said right-of-way line, North 136.60 feet, passing the southwest corner of said Block 47 at 67.60 feet on line, to the Point of Beginning, containing 1.125 acres, more or less.

**COLLECTIVE EXHIBIT "A"**
**PAGE 1 OF 4**

Belmont Property Description

Beginning on a concrete highway right-of-way monument found on the West right-of-way line of Mississippi State Highway No. 25, said point being 387.56 feet West of the Southeast Corner of the Northeast Quarter of Section 2, Township 7 South, Range 10 East, thence along said West right-of-way line in a curve to the left an arc distance of 314.32 feet, (Chord Bearing-North 01 degrees 25 minutes 56 seconds East-Chord Distance 313.74 feet), to an iron pin (found), said curve having a radius of 1509.61 feet, a delta angle of 11 degrees 55 minutes 45 seconds, and a tangent of 157.73 feet; thence North 88 degrees 59 minutes 31 seconds West for a distance of 276.77 feet to an iron pin (set) on the East right-of-way line of South Main Street (paved); thence along said East right-of-way line as follows: South 13 degrees 32 minutes 40 seconds East for a distance of 40.89 feet; thence South 20 degrees 41 minutes 14 seconds East for a distance of 48.72 feet; thence South 23 degrees 54 minutes 41 seconds East for a distance of 99.89 feet; thence South 22 degrees 19 minutes 39 seconds East for a distance of 50.56 feet; thence South 19 degrees 59 minutes 31 seconds East for a distance of 101.18 feet to an iron pin (set); thence leaving said right-of-way line run East for a distance of 147.81 feet to the Point of Beginning. All lying and being in the Northeast Quarter of Section 2, Township 7 South, Range 10 East, Tishomingo County, Mississippi, and containing 1.59 acres, more or less.

**COLLECTIVE EXHIBIT "A"**
**PAGE 2 OF 4**

**PARCEL I:**
VERNON, LAMAR COUNTY, ALABAMA PROPERTY
DESCRIPTION

Commencing at a point on the Southwest corner of the Southeast Quarter of the Southeast Quarter of Section 16, Township 15 South, Range 15 West, Lamar County, Alabama; run thence Northerly along the Westerly Line of said Southeast Quarter of Southeast Quarter a distance of 538.40 feet to the initial point of beginning of the property herein described; from said initial point of beginning continue Northerly along the Westerly line of said Southeast Quarter of Southeast Quarter a distance of 121.11 feet; thence run an interior angle to the left of 89 degrees 57 minutes 30 seconds a distance of 294.36 feet to the Westerly right of way line of Alabama Highway 17 (80 foot right of way); thence Southerly along said Westerly right of way lie a distance of 122.14 feet; thence turn an interior angle to the left of 97 degrees 25 minutes 30 seconds a distance of 278.49 feet to the point of beginning; lying in the Southeast Quarter of the Southeast Quarter of Section 16, Township 15 South, Range 15 West, Lamar County, Alabama.

**PARCEL II:**

Commencing at the Southwest corner of the Southeast Quarter of the Southeast Quarter of Section 16, Township 15 South, Range 15 West, Lamar County, Alabama; thence run Northerly along the Westerly boundary line of said Southeast Quarter of Southeast Quarter for a distance of 656.51 feet to the point of beginning; FROM SAID POINT OF BEGINNING continue Northerly along the West line of said Southeast Quarter of Southeast Quarter for a distance of 96.89 feet; thence turn an interior angle to the left of 89 degrees 04 minutes 00 second and run for a distance of 237.18 feet; thence turn an interior angle to the left of 84 degrees 37 minutes 00 seconds and run for a distance of 8.57 feet; thence turn an interior angle to the left of 271 degrees 52 minutes 00 seconds and run for a distance of 68.77 feet to the Westerly right of way line of Alabama Highway 17 (80' R.O.W.); thence run Southerly along said Westerly right of way for a distance of 80.06 feet; thence turn an interior angle to the left of 97 degrees 25 minutes 30 seconds and run for a distance of 294.36 feet to the point of beginning. Said parcel being in and a part of the Southeast Quarter of Southeast Quarter, Section 16, Township 15 South, Range 15 West, Lamar County, Alabama.

## RUSSELLVILLE, FRANKLIN COUNTY, ALABAMA
## PROPERTY DESCRIPTION

A tract of land being part of Lots 1 thru 5 and part of Lots 8 thru 12, Block 5 in the Nance-Lucas Addition to the Town of Russellville, Franklin County, Alabama, as same appears of record in the office of the Judge of Probate of Franklin County, Alabama, in Plat Cabinet A, Slide 26; said tract of land being more particularly described as follows: Commence at the Northeast corner of Lot 7 in the Nance-Lucas Addition to the Town of Russellville, said point being the intersection of the South right of way line of High Street and the West right of way line of Fifth Avenue; thence along the West right of way line of Fifth Avenue South 100 feet to a point; thence West 64.42 feet to the point of beginning of the tract of land hereby described; thence South 127.78 feet to a point; thence West 51.12 feet to a point; thence S 0 degrees 39' 48" E 21.37 feet to a point; thence West 165.02 feet to a point on the East right of way line of U.S. Highway 43; thence along said East right of way line N 6 degrees 05' 06" E 150.00 feet to a point; thence East 200 feet to the point of beginning of the tract of land hereby described; said tract of land contains 0.69 acres, more or less and is also subject to any and all rights of way and easements of record or unrecorded, Also an easement, said easement being part of Lots 7 and 8, in the Nance- Lucas Addition to the Town of Russellville, said easement being more particularly described as follows: Commence at the Northeast corner of Lot 7 in the Nance-Lucas Addition to the Town of Russellville, said point being the intersection of the South right of way line of High Street and the West right of way line of Fifth Avenue; thence along the West right of way line of Fifth Avenue South 100 feet to the point of beginning of the easement hereby described; thence continue South along the West right of way line of Fifth Avenue 24 feet to a point; thence West 64.42 feet to a point; thence North 24 feet to a point; thence East 64.42 feet to the point of beginning of the easement hereby described.

**COLLECTIVE EXHIBIT "A"**
**PAGE 4 OF 4**